# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF NEW JERSEY

JUSTIN CARNEGIE

       Petitioner,

vs.

       Case No.: 2:14-CR-00220-MCA-7

UNITED STATES OF AMERICA

       Respondent.

---

## MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO THE FIRST STEP ACT AND THE CHANGES TO THE COMPASSIONATE RELEASE STATUTE AND 18 U.S.C. § 3582(c)(1)(A)(i).

---

People grow, mature and evolve, and because conditions and circumstances change, it is virtually impossible to make sound decisions when first imposing sentence about precisely how long someone should spend behind bars. But that is exactly how the federal criminal justice system works. Judges are required to act as if they are omniscient and the prison terms they impose are – for all intents and purposes – final.

1

Justin Carnegie does not seek to justify, diminish, or detract from the seriousness of his offenses. And he unequivocally accepts responsibility for his criminal conduct.

Mr. Carnegie now moves this court pro-se for an order granting a reduction of sentence to time served as he respectfully submits that "extraordinary and compelling reasons" exist for a reduction of his sentence as outlined below.

## CASE HISTORY

On May 4, 2015, a criminal complaint was filed against Carnegie and others, charging them with a conspiracy to distribute heroin, in violation of 18 U.S.C. § 846. See Mag. 15-6593; Crim. No. 14-220 (ECF 1). On August 7, 2015, Carnegie was arrested. (Crim. No. 14-220; ECF 22). On November 2, 2016, a federal grand jury in Newark returned a Sixth Superseding Indictment, Criminal Number 14-220 ("Superseding Indictment"), against Carnegie and his co-conspirators. On March 10, 2017, the Government filed an Enhanced Penalty Information, pursuant to 21 U.S.C. § 851(a), charging that on or about September 19, 2011, Carnegie had been convicted in the New Jersey Superior Court of distribution of a controlled dangerous substance, based upon a guilty plea, which is a crime punishable by imprisonment exceeding one year under the laws of New Jersey. Crim. No. 14-220; ECF 281.2

2

This Enhanced Penalty Information increased the ten-year mandatory minimum term of imprisonment Carnegie faced on each of the two drug counts to a mandatory minimum term of twenty years. On June 21, 2017, Carnegie entered into a plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to all five counts of the Superseding Indictment with which he was charged. Crim. No. 14- 220; ECF 321. On December 4, 2018, Your Honor sentenced Carnegie—consistent with the parties' plea agreement—to a term of imprisonment of 300 months on Counts One, Eighteen, and Twenty, a term of 36 months imprisonment on Count Thirteen, and a term of 240 months imprisonment on Count Fourteen, all to be served concurrently. Crim. No. 14-220; ECF 855.

## ARGUMENT

Mr. Carnegie submits that there are extraordinary and compelling reasons in this case that support a reduction in sentence. The extraordinary and compelling reasons that a reduction in sentence is appropriate in this case are many. As an initial matter Mr. Carnegie is in a high-risk category of dying from the COVID-19 virus if he were to contract COVID-19 at the prison in which he is housed.

Carnegie has health conditions that place him in a higher risk category than others. This is because, and his records show, he has asthma. See Exhibit A.

3

There have been federal prisoners that have contracted the virus, overcame it only to contract it a second time and die. See Exhibit B. This is an extraordinary and compelling reason that militates for a reduction in sentence.

Another reason this Court can consider in reducing this sentence is the fact that one of the driving forces behind the sentence in this case was the 21 U.S.C. §851. Congress with the First Step Act reduced certain mandatory minimum penalties one of them was the sentences under §851. P.L. 115-391, 132 Stat. at 5220, at § 401(a)(2)(A)(ii). With the passage of the First Step Act, Congress concluded that punishments arising from § 851 sentencing enhancements were punitive and unfair. Congress failed to make the changes to § 851 retroactive to sentences imposed before the passage of the First Step Act. See P.L. 115-391, 132 Stat. 5194, at § 401. Therefore, individuals serving sentences with a § 851 enhancement seeking relief under §3582(c)(1)(A) must establish extraordinary and compelling reasons individually to be eligible. That Congress chose to foreclose one avenue for relief does not mean it chose to foreclose all means of redressing draconian sentences imposed under § 851. Indeed, Congress's decision to pass prospective-only changes to § 851 does not prevent this Court from resentencing Carnegie under the compassionate release statue based on individualized extraordinary and compelling reasons.

4

Many Courts have found that these changes while not retroactive can
support a finding for a reduction in sentence. See *United States v. Day*, 474 F.
Supp. 790, 807 (E.D. Va. 2020) (finding changes in §851 are "extraordinary and
compelling developments that constitute extraordinary and compelling reasons
justifying a reduction in Defendant's [ ] sentence" due to the "gross disparity" that
results); *United States v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 505 (S.D.
Iowa 2020) (granting reduction for extraordinary and compelling reasons when the
defendant's two § 851 enhancements would no longer count and the disparity was
such that the defendant "almost certainly would have completed his term of
imprisonment by now if sentenced under modern law."); *United States v. Price*,
No. CR 07-0152-06 (ESH), 2020 WL 5909789, at *4 (D.D.C. Oct. 6, 2020)
(finding that where application of § 851 has changed and would result in a much
lower sentence if applied today, "this situation, as a number of courts have
recognized, can present an extraordinary and compelling reason to reduce a
defendant's sentence, even in the absence of serious health issues.")

The third reason that this Court can consider a reduction in sentence in this
case is Carnegie's extraordinary rehabilitation while incarcerated. Since his
incarceration he has dedicated his life to changing his character. Along that path he
has completed numerous rehabilitative programs. These programs include but are
not limited to earning his GED, The Highly Respected Threshold Religious Re-

5

Entry Program, Sun Smart Class, Cardio Classes, Healthy Minds and Body, Stock Market, Budgeting Classes and more, See Exhibit C. He has also maintained an excellent work record and many prisoners have also spoken glowingly about who Mr. Carnegie is.

Carnegie has become a model of rehabilitation. He has spent his time on improving himself and his character. This is something the Court can and should consider in deciding whether a reduction in sentence is appropriate in this case.

Another factor that this Court can consider is the BOP's failures to protect prisoners during the pandemic. This is not a case where simply because the COVID-19 virus is present Carnegie is asking for a reduction in sentence. While the COVID-19 pandemic is serious it has brought with it many different aspects that make up extraordinary and compelling reasons. One is prisoners such as Mr. Carnegie have been restricted from visits, family communication, a horrible diet that has consisted of bologna sandwiches every day since April 1, 2020, restriction and cancelation of rehabilitative programs (in conflict with the dictates of 18 U.S.C. §3553(a)). In addition to all of these issues the Federal Bureau of Prisons has failed miserably in protecting federal prisoners from becoming infected with the virus, and even dying.

There is no doubt that a third wave of the virus is surging at this time across the country and in federal prisons. There is even talk that a new variant has entered

6

the country, that the vaccine might not be able to combat. If this is proven to be true, we will see the same thing in the FBOP that we have seen over the last 11 months. Courts across the nation have been releasing federal prisoners under 18 U.S.C. § 3582 motions based on the pandemic and danger to prisoners. One Court observed in granting a compassionate release motion, "[p]risons are tinderboxes for infectious disease," and "every day, outbreaks are appearing in new facilities." *United States v. Rodriguez*, No. 2-03-CR-00271-AB-1 (E.D., Apr. 1, 20202), See also *United States v. Hansen* 17-CR-50062 (ND Illinois 5-7-20); in which the court held, that even though there were no confirmed Covid-19 prisoner cases at the Terre Haute prison it would reduce *Hansen's* sentence to time served. The Federal Bureau of Prisons has failed miserably in protecting federal prisoners from becoming infected with the virus. The Federal Bureau of Prisons has had over 240 prisoners die of the virus as of this writing, and both prisoners and staff have tested positive at the facility to which Carnegie is held.

The spread of the COVID-19 virus across the country threatens us with unprecedented dangers. We have been told by the authorities to stay home, stay safe, wash our hands and to be at least six feet away from anyone. Those with underlying health problems need to take even greater precautions because of the dangerous aspects of this virus. Mr. Carnegie cannot do those things. He does not have the luxury of practicing "social distancing" in the prison where he lives with

7

sinks and toilet facilities, phones and computers shared with other inmates. The prison housing conditions create an inability to take preventive measures or self-care recommended by the CDC.

In courts around the country, prosecutors have erroneously argued that inmates are safely quarantined in jails and prisons.[1] Despite officials best intent and efforts, prisons are unequipped to control coronavirus. The spread is not controlled and inmates are not safer in prison than on the street.

This Court can and should consider the current pandemic in conjunction with the other reasons outlined above as well. Many courts have reduced sentences for the reasons set forth in this petition.

## I. THIS COURT HAS AUTHORITY TO RESENTENCE MR. CARNEGIE UNDER § 3582(c)(1)(A)(i) FOR THE EXTRAORDINARY AND COMPELLING REASONS PRESENTED HERE.

With the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to resentence prisoners to time served under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons," and the reasons that can justify

---

[1] *See, e.g., U.S. v. Harthill,* No. 19-cr-217 (E.D. Wa. 2019) (ECF No. 29 at 7:5) (arguing proposed release address is "not shown to be safer . . . than his current housing situation" in the jail). https://www.npr.org/sections/coronavirus-live-updates/2020/04/20/838943211/73-of-inmates-at-anohio-prison-test-positive-for-coronavirus

resentencing need not involve only medical, elderly, or family
circumstances.

In fact, the Second Circuit affirmed that position in *US v. Zullo*, No. 19-
3218-CR (2d Cir. Sept. 25, 2020, the Court found that, "the First Step Act of 2018,
Pub. L. 115-391, 132 Stat. 5194 ("First Step Act"), was simultaneously
monumental and incremental. Monumental in that its changes to sentencing
calculations, mandatory minimums, good behavior credits and other parts of our
criminal laws led to the release of thousands of imprisoned people whom Congress
and the Executive believed did not need to be incarcerated. Incremental, in that,
rather than mandating more lenient outcomes, it often favored giving discretion to
an appropriate decisionmaker to consider leniency.

This case reflects that dichotomy. The First Step Act provision we analyze
overturned over 30 years of history, but at the same time it often did no more than
shift discretion from the Bureau of Prisons ("BOP") to the courts. We must today
decide whether the First Step Act empowered district courts evaluating motions for
compassionate release to consider *any* extraordinary and compelling reason for
release that a defendant might raise, or whether courts remain bound by U.S.
Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.") § 1B1.13 Application
Note 1(D) ("Application Note 1(D)"), which makes the Bureau of Prisons the sole
arbiter of whether most reasons qualify as extraordinary and compelling. Because

9

we hold that Application Note 1(D) does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act, we vacate and remand the district court's contrary decision.

For all of these reasons, the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.

Nor can we say, as a matter of law, that a court would abuse its discretion by granting someone compassionate release on this record. It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place. *Id.* Beyond this, a district court's discretion in this area — as in all sentencing matters — is broad. *See United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc) (noting a district court's "very wide latitude" in sentencing). The only statutory limit on what a court may consider to be extraordinary and compelling is that "[r]ehabilitation ... *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added).

In the instant case, *Zullo* does not rely *solely* on his (apparently extensive) rehabilitation. *Zullo's* age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction. Indeed, Congress seemingly contemplated that courts might consider such circumstances when it passed the original compassionate release statute in 1984. *See* S. Rep. No. 98-225, at 55-56 (1984) (noting that reduction may be appropriate when "other extraordinary and compelling circumstances justify a reduction of an *unusually long* sentence" (emphasis added)); *see also **United States v. Maumau***, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *6-*7 (D. Utah Feb. 18, 2020) (further discussing this history and collecting cases where district courts have reduced sentences in part because they were overly long). On November 20, 2020, two other circuit courts joined the Second Circuit holding that U.S.S.G. §1B1.13 is not applicable to a §3582(c)(1)(A) motion filed by a defendant, as opposed to the Bureau of Prisons. As such, the Sixth Circuit and Seventh Circuit agreed that district courts are free to independently determine what constitutes and extraordinary and compelling reason for a sentence reduction under the statute, without reference to the policy statement. See ***United States v. Jones***, --F.3d. --, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020) and ***United States v. Gunn***, -- F.3d. --, No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20 2020).

See also ***United States v. Jamal Ezell***, Case No: 02-815-01, (2-11-21) in

which Judge DuBois reduced the 132 stacked 924(c) sentence to time served and

or 22 years after finding that the Court had the authority to do so.

While this is not a 924 (c) stacking case, the principle is the same. Congress

has given some power back to the people in the best position to determine if a

sentence reduction is appropriate – federal sentencing judges.

### A. When Congress originally enacted § 3582 in 1984, it intended for district courts to reduce sentences for prisoners on the basis of extraordinary and compelling reasons not limited to medical, family, or elderly circumstances.

Congress first enacted the modern form of the compassionate release

statute contained in 18 U.S.C. § 3582 as part of the Comprehensive Crime

Control Act of 1984. Section 3582(c) states that a district court can modify

even a final "term of imprisonment" in four situations, the broadest of which is

directly relevant here. A sentencing court can reduce a sentence if and

whenever "extraordinary and compelling reasons warrant such a reduction."

18 U.S.C. § 3582(c)(1)(A)(i). In 1984, Congress conditioned the reduction of

sentences on the BOP Director filing an initial motion in the sentencing court;

absent such a motion, sentencing courts had no authority to modify a prisoner's

sentence for extraordinary and compelling reasons. *Id.*

Congress never defined what constitutes an *"extraordinary and compelling reason"* for resentencing under § 3582(c). But the legislative history gives an indication of how Congress thought the statute should be employed by federal courts. One of Congress's initial goals in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep No. 98-225, at 52, 53 n.74 (1983). Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate Committee stressed how some individual cases may still warrant a second look at resentencing:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which **other extraordinary and compelling circumstances justify a reduction of an unusually long sentence**, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment.

*Id.* at 55–56 (emphasis added). Rather than having the Parole Commission review every federal sentence focused only on an offender's rehabilitation, Congress decided that § 3582(c) could and would enable courts to decide, in individual cases, if *"there is a justification for reducing a term of imprisonment."* *Id.* at 56.

13

Congress intended for the situations listed in § 3582(c) to act as *"safety valves for modification of sentences," id.* at 121, that enabled sentence reductions when justified by various factors that previously could have been addressed through the (now abolished) parole system. This particular safety valve would *"assure the availability of specific review and reduction to a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in the guidelines." Id.* Noting that this approach would keep *"the sentencing power in the judiciary where it belongs,"* rather than with a federal parole board, the statute permitted *"later review of sentences in particularly compelling situations." Id.* (emphasis added).

Congress thus intended to give federal sentencing courts an equitable power that would be employed on an individualized basis to correct fundamentally unfair sentences. And there is no indication that Congress limited the safety valve of § 3582(c)(1)(A) to medical or elderly release; if extraordinary and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence." S. Rep No. 98-225, at 55–56.

**B. The U.S. Sentencing Commission concluded that §
3582(c)(1)(A)'s *"extraordinary and compelling reasons"* for
compassionate release are not limited to medical, elderly, or
family circumstances.**

Congress initially delegated the responsibility for determining what

constitutes *"extraordinary and compelling reasons"* to the U.S. Sentencing

Commission ("Commission").  See 28 U.S.C. § 994(t) ("The Commission .

. . shall describe what should be considered extraordinary and compelling

reasons for sentence reduction, including the criteria to be applied and a list

of specific examples.").  Congress provided only one limitation to that

delegation of authority: "[r]ehabilitation of the defendant *alone* shall not be

considered an extraordinary and compelling reason."  28 U.S.C. § 994(t)

(emphasis added).  Congress no doubt limited the ability of rehabilitation *alone*

to constitute extraordinary circumstances so that sentencing courts could not

use it as a full and direct substitute for the abolished parole system.  Congress,

however, contemplated that rehabilitation could be considered with other

extraordinary and compelling reasons sufficient to resentence people in

individual cases. Indeed, the use of the modifier "alone" signifies just the

opposite: that rehabilitation could be used in tandem with other factors to

justify a reduction.

The Commission initially neglected its duty, leaving the BOP to fill

the void and create the standards for extraordinary and compelling reasons

warranting resentencing under § 3582(c)(1)(A). The Commission finally acted in 2007, promulgating a policy that extraordinary and compelling reasons includes medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, application note 1(A). After a negative DOJ Inspector General report found that the BOP had rarely moved courts for a § 3582(c)(1)(A) modification even for prisoners who met the objective criteria, see, U.S. Dep't of Justice Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (Apr. 2013) ("FBOP Compassionate Release Program"), the Commission amended its policy statement, expanding the guidance to courts on qualifying conditions and admonishing the BOP to file motions for compassionate release whenever a prisoner was found to meet the objective criteria in U.S.S.G. § 1B1.13. *Id.* at application note 4; see, also *United States v. Dimasi*, 220 F. Supp. 3d 173, 175 (D. Mass. 2016) (discussing the progression from the OIG report to new "encouraging" guidelines).

The Commission created several categories of qualifying reasons: (A) "Medical Conditions of the Defendant," including terminal illness and other serious conditions and impairments; (B) "Age of the Defendant," for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment; (C) "Family

Circumstances," where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver; and (D) "Other Reasons," when the Director of the BOP determines there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, application note 1(A). The Commission also clarified that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, application note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." *Id.*

Consistent with the text and legislative history of § 3582(c), the Commission concluded that reasons beyond medical, age, and family circumstances could qualify a s *"extraordinary or compelling reasons"* for resentencing, and that the extraordinary or compelling reasons need not be based on changed circumstances occurring after the initial sentencing of the defendant.

17

### C. Through the First Step Act, Congress changed the process for compassionate release based on criticism of BOP's inadequate use of its authority, returning to the federal judiciary the authority to act on its own to reduce sentences for *"extraordinary and compelling reasons."*

Prior to Congress passing the First Step Act, the process for compassionate release under § 3582(c)(1)(A) was as follows: the U.S. Sentencing Commission set the criteria for resentencing relief under § 3582(c), and the only way a sentencing court could reduce a sentence was if the BOP Director initiated and filed a motion in the sentencing court. See, PL 98–473 (HJRes 648), PL 98–473, 98 Stat 1837 (Oct. 12, 1984). If such a motion was filed, the sentencing court could then decide where *"the reduction was justified by 'extraordinary and compelling reasons' and was consistent with applicable policy statements issued by the Sentencing Commission."* *Id.* So, even if a federal prisoner qualified under the Commission's definition of extraordinary and compelling reasons, without the BOP Director's filing a motion, the sentencing court had no authority to reduce the sentence, and the prisoner was unable to secure a sentence reduction. This process meant that, practically, the BOP Director both initiated the process and set the criteria for whatever federal prisoner's circumstances the Director decided to move upon.

Leaving the BOP Director with ultimate authority for triggering and setting the criteria for sentence reductions under § 3582(c)(1)(A) created

several problems. The Office of the Inspector General found that the BOP

failed: a) to provide adequate guidance to staff on the criteria for

compassionate release; b) to set time lines for reviewing compassionate release

requests; c) to create formal procedures for informing prisoners about

compassionate release; and d) to generate a system for tracking compassionate

release requests. See, *FBOP Compassionate Release Program*, at i–iv. As a

result of these problems, the OIG concluded that "BOP does not properly

manage the compassionate release program, resulting in inmates who may be

eligible candidates for release not being considered." *Id.*; see, generally

Stephen R. Sady & Lynn Deffebach, *Second Look Resentencing Under 18*

*U.S.C. § 3582(c) as an Example of Bureau of Prisons Policies That Result in*

*Overincarceration*, 21 Fed. Sent. Rptr. 167 (Feb. 2009).

Congress heard those complaints. In late 2018, Congress passed the

First Step Act, part of which transformed the process for compassionate release

under § 3582(c)(1)(A). See, P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21,

2018). Section 603 of the First Step Act changed the process by which §

3582(c)(1)(A) compassionate release occurs: instead of depending upon the

BOP Director to determine an extraordinary circumstance and then move for

release, a court can now resentence "upon motion of the defendant," if the

defendant has fully exhausted all administrative remedies, "or the lapse of

30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once the defendant who has properly exhausted files a motion, a court may, after considering the 18 U.S.C. § 3553(a) factors, resentence a defendant, if the court finds that extraordinary and compelling reasons warrant a reduction. *Id.* Any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The effect of these new changes is to allow federal judges the ability to move on a prisoner's compassionate release application even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner.

Congress made these changes in an effort to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). Congress labeled these changes, "*Increasing* the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018) (emphasis added). Senator Cardin noted in the record that the First Step Act made several reforms to the federal prison system, including that "[t]he bill *expands compassionate release* under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199, at S7774 (Dec. 18, 2018) (emphasis added). In the House, Representative Nadler noted that

First Step included "a number of very positive changes, such as . . . *improving application of compassionate release*, and providing other measures to improve the welfare of Federal inmates." 164 Cong. Rec. H10346-04, 164 Cong. Rec. H10346-04, H10362 (Dec. 20, 2018) (emphasis added).

Federal judges now have the power to order reductions of sentences even in the face of BOP resistance or delay in the processing of applications.  The legislative history leading up to the enactment of the First Step Act establishes that Congress intended the judiciary not only to take on the role that BOP once held under the pre- First Step Act compassionate release statute as the essential adjudicator of compassionate release requests, but also to grant sentence reductions on the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the applicable statute.

### D. Statutory text defines judicial sentence reduction authority around *"extraordinary and compelling reasons,"* and the policy statements of the U.S. Sentencing Commission under § 1B1.13 do not preclude this Court from resentencing petitioner.

Once a prisoner has properly pursued administrative remedies and filed a motion for compassionate release, a federal court possesses authority to reduce a sentence if and whenever the court finds "extraordinary and compelling reasons warrant such a reduction."  A court must consider the 18 U.S.C. §

3553(a) sentencing factors in reducing any sentence, and any reduction of a

sentence that a court orders must also be "consistent with applicable policy

statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

    As noted above, the Sentencing Commission created a catch-all

provision for compassionate release under U.S.S.G. § 1B1.13, application

note (1)(D), which states:

> Other Reasons. — As determined by the Director of the Bureau
> of Prisons, there exists in the defendant's case an extraordinary
> and compelling reason other than, or in combination with, the
> reasons described in subdivisions (A) through (C).

The Commission also stated the process by which compassionate release

reductions should be decided:

> Motion by the Director of the Bureau of Prisons. — A reduction
> under this policy statement may be granted only upon motion by
> the Director of the Bureau of Prisons pursuant to 18 U.S.C. §
> 3582(c)(1)(A).

U.S.S.G. § 1B1.13, application note 4.

    The dependence on BOP in these policy statements is a relic of the prior

procedure that is now inconsistent with the First Step Act's amendment of §

3582(c)(1)(A).  Application Note 1(D) can no longer limit judicial authority to

cases with an initial determination by the BOP Director that a prisoner's case

presents extraordinary or compelling reasons for a reduction, because the First

Step Act has expressed allows courts to consider and grant sentence reductions

even in the face of an adverse or unresolved BOP determination concerning whether a prisoner's case is extraordinary or compelling. See, 18 U.S.C. § 3582(c)(1)(A), as amended by P.L. 115-391 § 503 (Dec. 21, 2018). And the Commission's now-dated statement indicating that the BOP must file a motion in order for a court to consider a compassionate release sentence reduction no longer controls in the face of the new statutory text enacted explicitly to allow a court to consider a reduction even in the absence of a BOP motion. *Id.* With the First Step Act, Congress decided that federal judges are no longer constrained or controlled by how the BOP Director sets its criteria for what constitutes extraordinary and compelling reasons for a sentence reduction. Consequently, those sections of the application notes requiring a BOP determination or motion are not binding on courts. See ***Stinson v. United States***, 508 U.S. 36, 38 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

Put differently, now that the First Step Act has recast the procedural requirements for a sentence reduction, even if a court finds there exists an extraordinary and compelling reason for a sentence reduction without the BOP Director's initial determination, then the sentence reduction is not

inconsistent "with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Many Courts have found in circumstances similar to Mr. Carnegie's in light of the First Step Act that the district court judges have the authority to determine what constitutes extraordinary and compelling reasons militating for a reduction in sentence. See also, *United States v. Beck*, 2019 WL 2716505, at 5-6 (M.D.N.C. 6-28-19); *United States v. Cantu*, 2019 WL 2498923, at *4, *United States v. Fox*, 2019 WL 3046086, at *3. See, *United States v. Maumau*, 2020 WL 806121 (D.Utah 2-18-20) (here the court relied on *Maumau's* young age at the time of the crime, the changes in the statute and his rehabilitation in determining that a sentence reduction was appropriate; *United States v. Young*, 2020 WL 1047815 (M.D. Tenn. 3-4-20). See also *United States v. Chad Marks*, No. 03-CR-6033L, 2020 WL 1908911 (WDNY April 20, 2020), Stacked 40-year 924(c) sentence reduced to 20 years. In *Marks*, Judge Larimer reduced a stacked 40-year 924(c) term to 20 years after finding that the change in law and rehabilitation by *Marks* were "extraordinary and compelling," reasons to reduce the sentence.

Courts across the nation have been reducing sentences after finding that they had the authority to do so in light of the First Step Act. On July 24, 2020, Judge Gerald J. Pappert granted relief in a stacked 924(c) case that resulted in a 213-year sentence. See *United States v. Clausen*, No. 00-291-2, Eastern District of PA,

Dkt. #277. Judge Pappert in reducing *Clausen's* 213-year sentence stated, "*Adam Clausen*, through his virtually unprecedented and unmatched record, has earned this opportunity. He has transformed himself while incarcerated and has channeled his abilities to improve the lives of other inmates. Based on the foregoing analysis of relevant §3553 (a) factors and pursuant to 18 U.S.C. §3582(c)(1)(A)(i), the Court reduces *Clausen's* sentence to a period of time served followed by three years of supervised release."

See also *United States v. Ledezma-Rodriguez*, 249 F. Supp. 3d 979 (S.D. Iowa 2017) the Court noted that it had "had occasion to re-evaluate Defendant's sentence" and, that the life sentence it had previously imposed "has no basis in the offense conduct itself, in the character of the Defendant, or even in the policy goals of sentencing espoused by our criminal justice system.")

## E. Mr. Carnegie has Extraordinary and Compelling Reasons why his Sentence Should be Reduced.

Many Courts across the country have found that the First Step Act has restored power to the people in the best position to decide if a reduction in sentence is appropriate – Federal Sentencing Judges.

Carnegie submits that he is no longer a threat to public safety. The biggest indication of that is his extensive rehabilitation. Carnegie is not just asking this Court to release him, but rather for a second chance to reclaim his life. To be the son, father, and husband, brother, uncle, and law-abiding

citizen he was meant to be. The issues before this Court demonstrate that there are extraordinary and compelling reasons to reduce the sentence. Those factors as mentioned above are the changes in law, the compassionate release statute changes, the extensive rehabilitation, the unusually long sentence, in conjunction with the COVID-19 pandemic and the BOP's failure to protect prisoners.

Mr. Carnegie's safety cannot be guaranteed with such a deadly pandemic that is ramping back up and taking off once again.

Mr. Carnegie, since his incarceration, has been on a mission to both rehabilitate himself and change his character. Some people do change, and when that change has been made, federal tax dollars should not be wasted on overincarcerating our citizens.

At the time of sentencing what decision makers cannot measure is the capacity for people to change. However, some people do. Carnegie is one of those people. President Trump himself acknowledged that people do change, and he did so when he released Alice Marie Johnson from the life sentence that was imposed on her. We also saw Matthew Charles released from prison based on the *First Step Act* - and it was President Trump who invited Mr. Charles to the State of The Union Address. When the Court originally sentenced Mr. Charles to 35 years in prison, it could not have foreseen the changes that he made in his life - never

receiving a disciplinary report while in prison, helping others with their legal pleadings, studying the bible, teaching GED classes. Mr. Charles changed his character so much that the President invited this man to the State of the Union address. Mr. Charles' original sentence of 35 years was largely driven because of his criminal history. At the time of sentencing, the sentencing judge explained that Mr. Charles had "a particularly violent history" and "had demonstrated by his actions that he's a danger to society and should simply be off the streets." *United States v. Charles*, 843 F.3d 1142, 1145, (6th Cir. 2016), (Dkt. # 96 Sentencing Transcript @ page 283). That history included "kidnapping a woman on two consecutive days for the purpose of terrorizing her; burglarizing a home; fleeing from a police interrogation, shooting a man in the head, and attempting to run off in the victim's car. Mr. Charles is now a free man living a law-abiding life despite this record, after having served 21 years in prison. This is an example that people do change, and do deserve second chances.

President Joe Biden has also commented on his belief that many federal sentences are overly harsh, and need to be changed.

https://www.themarshallproject.org/2019/10/10/2020-the-democrats-on-criminal-justice.

Mr. Carnegie has a family that loves and cares for him, See Exhibit D. They are ready and willing to assist Carnegie with a successful reentry. If released Mr.

Carnegie would be living with his sister, Shanaya Carnegie, at 1249 Main Street, Unit#1, Hampton, PA 18067.

Mr. Carnegie submits that he is no longer a threat to public safety. The biggest indicator of this is his commitment to rehabilitation, and dramatic character change. The Court should also consider whether, upon release, the defendant would pose "a danger to the safety of any other person or to the community." This Court is not faced with a stark choice between simply turning Carnegie loose, or continuing his incarceration. The Court has the option of reducing Carnegie 's period of incarceration, followed by a term of supervised release.

Supervised release, which is laid out at 18 U.S.C. § 3583, was created by Congress as "a form of post confinement monitoring overseen by the sentencing court." *Johnson v. United States*, 529 U.S. 694, 696-97 (2000). As the Supreme Court has explained, "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends," providing "individuals with post confinement assistance" through the supervision of the court. *United States v. Johnson*, 529 U.S. 53, 59 (2000). "The court can provide such assistance because, '[w]hile on supervised release, the offender [is] required to abide by certain conditions,' *Johnson v. United States*, 529 U.S. at 697, such as regularly reporting to a probation officer, pursuing schooling or work, and refraining from further criminal activity, *see* U.S.S.G. § 5D1.3(c); 18 U.S.C. §

28

3583(d)." *United States v. Island*, 916 F.3d 249, 253 (3d Cir. 2019). Congress has also authorized supervising courts to revoke supervised release and order re-imprisonment when defendants fail to meet their release conditions. *See* 18 U.S.C. § 3583(e); *Johnson v. United States*, 529 U.S. at 697.

Supervised release is routinely imposed as a component of sentencing, including sentences for crimes far more serious than those of which Carnegie has been convicted. Supervised release affords the court an array of conditions which it can impose, the defendant's compliance with which will be monitored by a probation officer. New conditions can be added as necessary. Beyond the low risk that Carnegie now presents, whatever risk there is can be further mitigated by supervised release. *See United States v. Williams*, 2020 WL 1751545, at *3 (N.D.Fla. Apr. 1, 2020) (although court could not conclude that defendant posed no risk at all to public safety, "the risk of him engaging in further criminal conduct is minimal and can be managed through home confinement and the terms of his supervised release."

Mr. Carnegie has submitted a request to the Warden at his facility seeking compassionate release. 30 days have lapsed without the warden or the BOP filing a motion with this Court on his behalf. See *United States v. Rita Gluzman*, 2020 WL 4233049, (SDNY 7-23-20); *United States v. Marks*, supra. Thus, the motion is ripe for this Court's review, See Exhibit E.

## <u>CONCLUSION</u>

President Abraham Lincoln once said, *"I have always found that Mercy bears richer fruits than strict justice."* Mr. Carnegie is asking this Court for the same mercy spoke about by President Lincoln.

This request for compassionate release is a request for a second chance for Mr. Carnegie to reclaim his life. To be the son, brother, husband, father, and law-abiding citizen he was meant to be.

Respectfully Requested,

Justin Carnegie

Dated: March 30 , 2021