

**U.S. Department of Justice**

*United States Attorney*
District of New Jersey

---

*Garrett J. Schuman*
*Assistant United States Attorney*

*970 Broad Street, 7ᵗʰ floor*
*Newark, New Jersey 07102*

*(973) 645-2700*

February 2, 2023

**FILED VIA ECF ON CASE DOCKETS**
**14-CR-220 AND 20-CV-4315**

The Honorable Madeline Cox Arleo
United States District Judge
Martin Luther King, Jr. Federal Building
& United States Courthouse
50 Walnut Street
Newark, NJ 07102

Re:   *United States v. Justin Carnegie*,
        Crim. No. 14-220-MCA-7 and
        Civ No. 20-4315

Dear Judge Arleo:

The Government respectfully responds to two *pro se* letters filed by Defendant Justin Carnegie regarding his motion to vacate sentence under 28 U.S.C. § 2255 and his already-denied compassionate release motion under 18 U.S.C. § 3582.  *See* ECF No. 1046[1] (filed in support of 20-cv-4315, ECF No. 1 (the "§ 2255 Motion"); ECF No. 1048 (filed in support of ECF No. 1000 (the "§ 3582 Motion")).

## FACTUAL BACKGROUND

As a member of the Grape Street Crips—a violent street gang, operating throughout the United States, including New Jersey—Carnegie actively engaged in violence and sold both heroin and crack-cocaine.  PSR ¶¶ 48, 56–98.  Indeed, Carnegie was a senior member of an organization that routinely engaged in acts of intimidation and violence, including murder, attempted murder, assault, and

---

[1]  "ECF" refers to pleadings filed in D.N.J. Criminal Number 14-220. "PSR" refers to the final Presentence Investigation Report.

witness intimidation.  PSR ¶ 50.  Members of the Grape Street Crips—including Carnegie—routinely used social media, among other means, to publicly identify individuals who were cooperating with law enforcement, to issue threats against those individuals, and to disseminate messages intended to dissuade individuals and witnesses from cooperating with law enforcement.  PSR ¶ 53.  Carnegie also used YouTube to spread the message that those who cooperated with law enforcement would be targeted for murder.  PSR ¶ 54.  Following the murder of one Grape Street Crips member by members of the Bloods street gang in September 2013, Carnegie and others agreed to go to the area of Avon Avenue in Newark on October 7, 2013 and kill any member of the Bloods in retaliation for the murder.  Carnegie was the designated getaway driver.  PSR ¶ 56.

Carnegie was also actively involved in the gang's distribution of heroin and crack cocaine.  PSR ¶¶ 57–98.  Carnegie and one of his associates used and shared a dedicated cell phone to manage and conduct their high-volume drug business (the "Carnegie-Singleton Phone").  PSR ¶ 58.  Based on intercepted calls and text messages, quantities of heroin seized during the investigation of Carnegie, and call detail records for the Carnegie-Singleton Phone, Carnegie and his co-conspirators distributed over one kilogram of heroin between July 2013 and May 4, 2015.  PSR ¶ 97.  In addition to their distribution of heroin, Carnegie and other gang members distributed at least 280 grams of crack-cocaine between May 2013 and May 2015.  PSR ¶ 98.

Ultimately, Carnegie, through counsel, negotiated and secured a plea agreement that was quite favorable.  On June 21, 2017, Carnegie entered into a plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to all five counts of the Superseding Indictment with which he was charged, namely:  (1) Count One, Conspiracy to Commit Racketeering, in violation of 18 U.S.C. § 1962(d); (2) Count Thirteen, Violent Crime in Aid of Racketeering – Conspiracy to Assault with a Dangerous Weapon, contrary to N.J.S.A. 2C:12-1(b)(2) and 2C:5-2, in violation of 18 U.S.C. § 1959(a)(6); (3) Count Fourteen, Conspiracy to Possess a Firearm, in violation of 18 U.S.C. § 924(o); (4) Count Eighteen, Conspiracy to Distribute Crack-Cocaine, contrary to 21 U.S.C. §§ 841(a) and (b)(1)(A), in violation of 21 U.S.C. § 846; and (5) Count Twenty, Conspiracy to Distribute Heroin, contrary to 21 U.S.C. §§ 841(a) and (b)(1)(A), in violation of 21 U.S.C. § 846.  ECF Nos. 207, 321, 855.  The Plea Agreement contained factual stipulations, including that Carnegie (1) was a member of the Grape Street Crips; (2) actively participated in a drug conspiracy with fellow gang members to traffic more than 280 grams of crack-cocaine and more than one kilogram of heroin; and (3) participated with fellow gang members in a retaliatory shooting against rival gang members on October 7, 2013.  ECF No. 321.

Notably, as part of the plea agreement, the Government agreed not to bring any further charges against Carnegie for his role in a kidnapping plot and two

separate murder plots. ECF No. 822-1 at 8–9. In the plea agreement, the Government and Carnegie agreed that the appropriate sentence was 25 years' imprisonment. ECF No. 321. The stipulated sentence was well below the maximum potential sentence that Carnegie faced for his crimes—life in prison. On June 27, 2017, Carnegie entered his plea before this Court. ECF No. 319.

On December 4, 2018, Your Honor sentenced Carnegie—consistent with the parties' plea agreement—to a term of imprisonment of 300 months on Counts One, Eighteen, and Twenty, a term of 36 months' imprisonment on Count Thirteen, and a term of 240 months' imprisonment on Count Fourteen, all to be served concurrently. ECF No. 855. On December 13, 2018, Carnegie filed a notice of appeal. ECF No. 868. On or about February 19, 2020, Carnegie moved to dismiss his appeal, pursuant to Federal Rule of Appellate Procedure 42(b), following consultation with counsel. App. No. 18-3743 (3d Cir.); ECF 43-1 at ¶ 9. Later that same day, the Third Circuit dismissed the appeal. App. No. 18-3743 (3d Cir.); ECF No. 44.2.

Carnegie has been serving his sentence at Federal Correctional Institute McKean ("FCI McKean"), which is located in Lewis Run, Pennsylvania.

## PROCEDURAL BACKGROUND

The § 2255 Motion

On April 7, 2021, Carnegie filed his § 2255 motion. *See* 20-cv-4315, ECF No. 1. On December 28, 2020, the Government filed a 15-page letter brief in response to the motion. 20-cv-4315, ECF No. 10. On January 27, 2021, Carnegie filed a reply in further support of his § 2255 motion. 20-cv-4315, ECF No. 11. On July 22, 2022, Carnegie filed an additional letter in support of his § 2255 motion, claiming that an "intervening change in law" rendered him "actually innocent" of one of the charges to which he pled guilty. ECF No. 1046.

The § 3582 Motion

On April 7, 2021, Carnegie filed his § 3582 Motion. ECF No. 1000. On September 28, 2021, the Government submitted a 15-page letter in opposition. ECF No. 1020. On March 9, 2022, this Court issued a detailed Order denying that motion. Nonetheless, on August 22, 2022, with the time to appeal or seek reconsideration having long since expired, Carnegie wrote to the Court claiming that he "currently ha[s] a motion seeking a reduction in sentence before the Court," and asking the Court to "consider" his letter "in determining whether or not [he] deserve[s] a reduction in sentence." ECF No. 1048.

## ARGUMENT

**I.    The *Taylor* Claim Is Untimely, Will Not Result In Carnegie's Being Released From Custody, And Is Meritless In Any Event.**

Carnegie contends that the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), renders him "actually innocent of Count #14 of [the] indictment" for Conspiracy to Use, Carry, or Possess a Firearm in Furtherance of a Crime of Violence, because "possession of a firearm as typically charged under 18 U.S.C. § 924(c) with its predicate conduct or offense being a conspiracy or attempt crime is not a crime of violence." ECF No. 1046, at 1. As explained below, there are three problems with this claim: (1) it is untimely; (2) adjudicating it would have no effect on Carnegie's sentence; and (3) Carnegie is not actually innocent of Count Fourteen.

### A.    The Claim Is Untimely.

But for three exceptions not pertinent here, the Antiterrorism and Effective Death Penalty Act ("AEDPA") states that § 2255 motions must be filed within one year of the date on which the conviction became final. 28 U.S.C. § 2255(f)(1). Carnegie's conviction became final on May 19, 2020, when his time for filing a petition for certiorari expired, i.e., 90 days after the Third Circuit dismissed his appeal. *Clay v. United States*, 537 U.S. 522 (2003). And he timely filed his § 2255 motion within one year of that date. But just because Carnegie's § 2255 motion was timely filed and is still pending does not mean that he can freely add claims to it. Rather, to amend his § 2255 motion to add a new claim, Carnegie must show *either* that the new claim "relates back" to a claim in his original motion (*see* Fed. R. Civ. P. 15(c)) or, alternatively, that he may properly invoke one of the other triggering events in § 2255(f) to render his claim timely. He cannot make either showing.

First, Carnegie's claim does not "relate back" to his original § 2255 motion. The Third Circuit explained that a "prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period." *United States v. Duffus*, 174 F.3d 333, 338 (3d Cir. 1999). In the original § 2255 motion, Carnegie's only claims concerned alleged ineffective assistance of counsel. 20-cv-4315, ECF No. 1. Such claims do not share a "common core of operative facts" with Carnegie's brand-new claim concerning his conviction under 18 U.S.C. § 924(o). *Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009).

Second, Carnegie points to no new rule of constitutional law made retroactive by the Supreme Court and no new evidence that was discovered to allow him to invoke one of the later triggering events listed in § 2255(f)(2)–(4).

Granted, Carnegie invokes *Taylor* as the Supreme Court decision that renders his claim timely under § 2255(f)(3).  But the new rule that gave rise to Carnegie's claim was announced by the Supreme Court in *United States v. Davis*, 129 S. Ct. 2319 (2019).  *Davis* held that a <u>conspiracy</u> to commit Hobbs Act robbery could not qualify as a predicate crime of violence under 18 U.S.C. § 924(c)(3)(B), and the Government had conceded that a conspiracy could not qualify under § 924(c)(3)(A). *Davis*, 129 S. Ct. at 2325.  *Taylor* held that <u>attempted</u> Hobbs Act robbery does not qualify as a predicate crime of violence under 18 U.S.C. § 924(c)(3)(A), *see Taylor*, 142 S. Ct. at 2020, but Carnegie wasn't charged with a § 924(o) predicated on attempted Hobbs Act robbery. Because *Davis* supplied the new rule Carnegie needed to move to vacate his § 924(o) conviction, and because *Davis* was issued in 2019, Carnegie's claim regarding Count Fourteen was available to him at the time he filed his original § 2255 motion on April 7, 2021.

As Carnegie's claim regarding Count Fourteen comes more than one year after his claim ripened, it is untimely.

### B. The Concurrent Sentencing Doctrine Obviates The Need To Decide This Issue.

Timeliness aside, even were Carnegie correct that *Taylor* renders him actually innocent of Count Fourteen (which, as set forth in Subsection I.C below, is by no means clear), an order from this Court so holding would have no impact on Carnegie's sentence.

Under the "concurrent sentencing doctrine," courts can "avoid resolution of legal issues affecting less than all counts in an indictment if at least one will survive and sentences on all counts are concurrent." *United States v. McKie*, 112 F.3d 626, 628 n.4 (3d Cir. 1997); *accord Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986) (when "the defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility.").

Here, this Court should exercise its discretion to avoid deciding whether Carnegie's claim is timely and, if so, whether *Taylor* renders him actually innocent of Count Fourteen.  The reason for this is straightforward: this Court sentenced Carnegie to "a term of 300 months on each of Counts 1, 18, and 20; a term of 36 months on Count 13; and a term of 240 months on Count 14, <u>all terms to be served concurrently</u>."  ECF No. 855 (Judgment in a Criminal Case), at 1.  In other words, even if Carnegie were "actually innocent" of Count 14 (something this Court need not decide), his 300-month sentence on Counts 1, 18, and 20 would remain in full effect, meaning that vacating his concurrent 240-month sentence on Count 14 would be pointless.  *See Duka v. United States*, 27 F.4th 189, 195 (3d Cir. 2022) (holding that Judge Kugler properly exercised

his discretion when he declined to decide whether § 924(c) counts were invalid after *Davis* where defendants were serving life sentences on other counts that were unaffected by the § 924(c) error they raised), *cert. denied,* 2023 WL 350032 (U.S. Jan. 23, 2023).

> ### C.    In Any Event, Carnegie Cannot Show That He Is Actually Innocent of the § 924(o) Charge, Where He Admitted To Participating In The Aggravated Assault Underlying Count 13, Which Served As The Predicate For Count 14.

In any event, Carnegie cannot show he is "actually innocent"—that is factually innocent—of the § 924(o) offense.

"[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. 614, 623 (1998). In cases where the Government has forgone more serious, or at least equally serious, charges during plea bargaining, the movant's showing of actual innocence "must also extend to those charges." *See id.* at 624 (considering whether there was evidence that the government forewent an equally-serious charge such that the defendant would have to show actual innocence of that charge); *see also United States v. Caso*, 723 F.3d 215, 220-221 (D.C. Cir. 2013) (noting that the *Bousley* Court's analysis suggests "it intended the actual innocence requirement to extend to equally serious charges" and the Court's likely rationale also "supports requiring petitioners to show their innocence of equally serious charges"); *Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003) ("The logic of the *Bousley* opinion does not require that the charge that was dropped or foregone … be more serious than the charge to which the petitioner pleaded guilty. It is enough that it is as serious.").

As this Court has previously ruled, where a defendant admits during his plea colloquy that he committed an offense that qualifies as a predicate crime of violence under 18 U.S.C. § 924(c)(3)**(A)**, that defendant's § 924(c) conviction should remain intact notwithstanding *Davis*'s invalidation of § 924(c)(3)**(B)**, even where the defendant was not "separately charged with or convicted of" the admitted offense. *See Lawrence v. United States*, No. 18-cv-16006 (MCA), 2022 WL 2916064, at *6 (D.N.J. July 25, 2022) (citing *United States v. Lake*, 150 F.3d 269, 274–75 (3d Cir. 1998)). Thus, Count Fourteen "remains valid so long as there is legally sufficient proof [Carnegie] committed" a qualifying crime of violence. *Lawrence*, 2022 WL 2916064, at *6.

Indeed, there is substantial proof that Carnegie committed a qualifying crime of violence, namely, purposely assaulting another with a firearm "in furtherance of, and facilitated by, the New Jersey set of the Grape Street Crips, an enterprise, as defined in Title 18 United States Code, Section 1961(4)". ECF No. 321 (U.S. Plea Agreement with Justin Carnegie), at 10. While under oath,

Carnegie admitted during his plea hearing in this Court that he was a member of an enterprise engaged in racketeering activity, and that in order to maintain and increase his position in the enterprise, he participated in the purposeful assault of another with a firearm:

> AUSA:  Mr. Carnegie, at some point, did you become a member of the New Jersey set of the Grape Street Crips - that is, a trusted associate invited into the group by the leadership to commit crimes and otherwise further the goals of the New Jersey Grape Street Crips?
>
> Carnegie:  Yes.
>
> . . .
>
> AUSA:  In or about September of 2013, was a fellow gang member murdered by rival gang members?
>
> Carnegie:  Yes.
>
> AUSA:  On or about October 7, 2013, did you and other gang members attempt to avenge the murder of that fellow gang member by shooting at individuals associated with the gang that had killed him?
>
> Carnegie:  Yes.
>
> AUSA:  Specifically, did you and other gang members use two vehicles to drive to the area of Avon Avenue in Newark, New Jersey?
>
> Carnegie:  Yes.
>
> AUSA:  And after arriving in the area of Avon Avenue, did another gang member discharge over a dozen pistol rounds in an attempt to shoot rival gang members?
>
> Carnegie:  Yes.
>
> . . .
>
> AUSA:  Did you participate in the attempt to avenge that fellow gang member because, among other reasons, doing so would help you maintain your position or

7

status in the New Jersey Grape Street Crips organization?

Carnegie:  Yes.

AUSA:  When you participated in the shooting, did you know and understand that another gang member would use a firearm in the attempt to avenge the murder of that fellow gang member?

Carnegie:  Yes.

AUSA:  When you participated in the shooting, did you intend that you or another gang member would assault a rival gang member with a firearm?

Carnegie:  Yes.

ECF No. 822-1, at 19–22; *see* ECF No. 321, at 10 ("This Office and Carnegie agree to stipulate to the following facts: . . . On or about October 7, 2013, Carnegie and others participated in the attempted shooting of rival gang-members in retaliation for the then recent-murder of a fellow-gang-member."). Carnegie's admissions satisfy all the elements of a predicate crime of violence for 18 U.S.C. § 924(c)(3)(A), namely, assault with a dangerous weapon in aid of racketeering, contrary to N.J.S.A. 2C:12-1(b)(2).  *United States v. Abdullah*, 905 F.3d 739, 749 (3d Cir. 2018) (holding "that a conviction for third-degree aggravated assault with a deadly weapon under New Jersey law, § 2C:12-1(b)(2), is categorically a crime of violence").  Put simply, although the § 924(o) offense was nominally predicated on a Violent Crimes in Aid of Racketeering conspiracy to commit aggravated assault, that conspiracy achieved its object when Carnegie and others attempted to shoot a rival with a firearm.[2]

Accordingly, even if this Court were to find that Carnegie's challenge to Count Fourteen is timely (Section I.A above), and also decide not to exercise its

---

[2] It makes no difference that Carnegie admitted to attempting to shoot a rival because § 924(c)(3)(A) covers both the actual and attempted use of physical force.  *See United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020) ("[W]here a crime of violence *requires* the use of physical force — as is usually the case — the categorical approach produces the opposite outcome: because the substantive crime of violence invariably involves the use of force, the corresponding attempt to commit that crime necessarily involves the attempted use of force.  Such an attempt constitutes a "crime of violence" within the meaning of the [elements] clause in § 924(c)(3)."), *aff'd*, 142 S. Ct. 2015 (2022).  Here, because intentionally shooting someone with a firearm is a crime of violence, so too is the attempt to commit that offense.

discretion under the concurrent sentencing doctrine (Section I.B above), Carnegie's challenge to Count Fourteen fails on its merits.

## II. Carnegie Provides No Basis For Reconsidering This Court's Unappealed Decision To Deny His § 3582 Motion.

Carnegie separately claims to "currently have a motion seeking a reduction in sentence." ECF No. 1000. It appears that Carnegie may have misunderstood the Court's already-issued Order fully denying the § 3582 Motion, which he never appealed. *See* ECF No. 1037 ("IT IS on this 9th day of March, 2022, ORDERED that Carnegie's Motion for Reduction of Sentence and Compassionate Release, ECF No. 1000, is DENIED without prejudice."). Given that the Court long ago denied Carnegie's § 3582 Motion, he is not entitled to any relief.

Nonetheless, it bears emphasis that Carnegie raises no new factual grounds in support of his § 3582 Motion. Instead, he cites a series of federal district court opinions, as well as *Concepcion v. United States*, 142 S. Ct. 2389 (2022). *Concepcion* held that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Id.* at 2404. In all of the other cases that Carnegie cites, federal district courts granted sentencing reductions to otherwise-eligible defendants based on the fact that the First Step Act—prospectively—eliminated the practice of "stacking" sentences under 18 U.S.C. § 924(c). Carnegie does not make any argument in his letter nor in his initial § 3582 Motion about such a sentencing disparity as it applied to him—nor could he—because his sentence did not include any "stacked" § 924(c)'s, much less any term of imprisonment that was ordered to run consecutively. *See* ECF No. 855, at 3 (in which this Court imposed "all terms to be served concurrently" in Carnegie's sentence).

Further, *Concepcion* addressed a district court's discretion at step two of the sentence-reduction process. In other words, once the defendant had shown a legal basis for reducing a sentence, a district court *may* consider post-sentencing legal developments in deciding whether (and how much) to reduce the sentence. Here, this Court found Carnegie ineligible for a sentencing reduction because he failed to show extraordinary and compelling reasons for such a reduction. ECF No. 1037 at 3–4. So even if Carnegie had invoked post-sentencing legal changes that were relevant to his case (and he has not), *Concepcion* has no bearing on this Court's adjudication of his § 3582 Motion. *See United States v. King*, 40 F.4th 594, 596 (7th Cir. 2022) ("*Concepcion* is irrelevant to the threshold question whether any given prisoner has established an "extraordinary and compelling" reason for release.").[3]

---

[3] In any event, the 18 U.S.C. § 3553(a) factors do not support Carnegie's release.

## **CONCLUSION**

For the reasons described above, in addition to the arguments previously articulated by the Government in opposition to Carnegie's already-briefed § 2255 Motion and already-decided § 3582 Motion, this Court should: (1) deny Carnegie's § 2255 Motion without a hearing because the "motion and the files and records of the case conclusively show" that his various claims are entirely lacking in merit; (2) decline to issue a certificate of appealability with respect to the denial of Carnegie's § 2255 Motion because it fails to assert a debatable constitutional violation that reasonable jurists would find debatable; and (3) reject Carnegie's attempt to relitigate his § 3582 Motion, which this Court denied in March 2022.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

*Garrett Schuman*

BY:   GARRETT J. SCHUMAN
Assistant United States Attorney